Stewart, J.
Defendant assigns seven specifications of error, but they can be combined into three questions^ as follows:
1. Did the trial court err in overruling defendant’s motions to direct a verdict and render judgment in favor of defendant and to arrest the evidence from the jury, which motions were made at the conclusion of all the evidence?
2. Did the trial court err in its charge to the jury?
3. Did the trial court err in admitting incompetent evidence ?
The first question is the most serious of the throe, and, in view of the conclusion at which we have arrived, the other questions may be disregarded..
The question presented to us relates to the construction of the contract.
It will be noted that the contract contemplates the showing of the book value of the shares of stock of the company, and that such book value is to be determined by the accountants under certain directions as to procedure set forth therein.
No question is made as to any' determination of the accountants with reference to book value, except the depreciation found by them of certain machinery, equipment and office equipment which had been mainly acquired by the company between 1904 and 1926, so that the only question is as to what value should be placed upon those items.
It seems that the accountants had been preparing statements for The Brennan Company for some 20 years.
The items in dispute had been totally depreciated by 1926, *35 and the company had obtained the benefit of that depreciation in the filing of its income tax returns. However, in that year the company had an appraisement made of the items here in dispute, and thereafter on its books and in its statements continuously carried an item marked, “appreciation for machinery and equipment,” in the amount of $6,271.27, and an item marked, “appreciation for office equipment,” in the amount of $837.38, making a total of $7,108.65, and among its liabilities the company had carried an item marked, “surplus from appreciation,” amounting to $7,108.65.
It appears that the accountants named in the contract had prepared the statement for the company each year, but that the statement was prepared from the books of The Brennan Company, without audit. In other words, the statement prepared each year contained the asset and liability of $7,108.65 for machinery, equipment and office equipment, which had been placed on the books in 1926, after they had previously been entirely depreciated.
Plaintiff contends that the instructions given to the accountants in the contract to prepare a statement showing the book value of the shares of stock of the company contemplate a book value to be shown according to what appeared on the books at the time of the statement, and the Court of Common Pleas was of the opinion that the instruction to the accountants, that in making up their statement they must include all machinery and equipment at the depreciated value thereof, created an ambiguity as to what the depreciated values should be, whether as they appeared on the ledger or depreciated, as the accountants claimed, by ordinary and usual methods of accounting. Therefore, the court concluded that that ambiguity must be resolved by the jury.
We are of the opinion that there is no ambiguity in the contract; that the accountants abided by its terms; and that, since the contract provides that the determination made by the accountants shall be final and conclusive, both plaintiff and defendant are bound by such determination.
As was said by Judge Zimmerman in the case of Campbell et al.. Trustees, v. Automatic Products & Die Co., 162 Ohio St., 321, 329, 123 N. E. (2d), 401:
*36 “It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator’s acts. 6 Corpus Juris Secundum, 152, Arbitration and Award, Section 1; Corrigan v. Rockefeller, 67 Ohio St., 354, 367, 66 N. E., 95, 98.”
As far back as 1835, this court, in the case of Ormsby’s Admrs. v. Bakewell & Johnson, 7 Ohio, 99, held that, where arbitrators are substituted by parties, the award of the arbitrators is final and can not be impeached for error: and that nothing but fraud in the parties or in the arbitrators can be alleged to avoid the award.
In the case of Fred R. Jones Co. v. Fath, 101 Ohio St., 47, 126 N. E., 878, this court held that, where parties to a construction contract agree to abide by the decision of an engineer or architect having oversight or supervision of such work as to the amount, quality, acceptability and fitness of the several kinds rof work to be done and. paid for under such contract, the decision of the arbitrator so designated- is binding upon the parties unless it is shown by clear and convincing evidence that such decision is based upon fraud, dishonesty or collusion.
In the Jones' Co., case, the company sublet a contract to Path for excavation and was to pay Path so much per cubic yard.
In the subletting contract, Path agreed to do his part of the work in accordance with the requirements of the original contract between the city of Cleveland and the Jones company and to accept the price provided for therein to be paid as the city of Cleveland paid the Jones company. The city engineer was to determine the quantity of excavation.
When the contract was completed, Path claimed that he had moved a much larger quantity of excavation than the city engineer determined, and that he was entitled to be paid for ail that he moved.
The trial court allowed the jury to determine the amount of excavation that had been moved, and it returned a verdict for Path for an amount greatly in excess of the price paid by the city of Cleveland to the company.
The Court of Appeals affirmed the judgment of the trial *37 court entered upon the verdict, and this court, in reversing the judgment of the Court of Appeals, determined that Fath could recover for no more excavation than had been determined by the city engineer, since there was no evidence of fraud, dishonesty or collusion on his part.
It seems to be the universal law that where a matter is submitted by parties to an arbitrator for decision, with an agreement that the arbitrator’s decision shall be binding upon the parties, they are bound by such decision provided there is no fraud or bad faith upon the part of the arbitrator and he acts according to the instructions given him.
Therefore, the question for us to decide is whether the accountants followed the directions given to them in the contract. Those directions are that they should proceed promptly to make an examination of the property, books, accounts and assets of the company and prepare a statement showing the book value of the shares of stock of the company.
It will be noted that the contract does not provide that the book value should be shown as the items were kept on the books, but that specific instructions are given as to how that book value should be ascertained.
In the first place, the accountants were directed to employ ordinary and usual methods of accounting in the preparation of such statement. That direction does not in any way indicate that in employing ordinary and usual methods of accounting it was intended to _ mean the ordinary and usual methods in which The Brennan Company kept its books.
The accountants were further directed to make an inventory of all work in process and raw material and that the physical inventory, to be made by Reuben Augustine at the close of business on January 31, 1945, might be relied upon by the accountants.
It is obvious that such inventory was not to be taken from the books of the company but was to be solely that made by Augustine.
The accountants were further directed that all machinery and equipment should be included at the depreciated value thereof. There is no statement that such machinery and equipment should be taken at the value thereof on the books of the *38 company, which value for nearly 20 years had been the same, without any markdown or depreciation, and which was designated on the company’s books as appreciated value, the sole direction being to include such items at the depreciated value thereof.
The accountants were further directed to include all accounts receivable at the' value which the accountants might attribute to them, having regard for the age of the accounts receivable, and the like. That direction is obviously not to take the accounts receivable at the value on the books of the company but at the value attributed to such accounts by the accountants themselves.
The directions are further that the accountants give full and complete consideration to any indebtedness or accounts payable of the company and do all other things as might be necessary to determine the book value of each share of stock.
It seems to us that the directions to the accountants are neither ambiguous nor complicated. They contemplate not the book value shown on the company’s ledger, but a real book value as determined by the accountants according to the directions given them.
In the directions the accountants were to employ ordinary and usual methods of accounting and to value the machinery and equipment, the only items in issue here, at the depreciated value thereof.
The accountants arrived at the depreciated value on the basis of the cost of the machinery and equipment, less depreciation.
It is true, as has been said, that for nearly '20 years the company had carried the items on the books at $7,108.65, but there had been no depreciation of that figure, so, in following the directions in the contract to value the items at the depreciated value thereof by ordinary and usual methods of accounting, the accountants did that very thing. They testified that to value the machinery and equipment on the basis of its cost, less depreciation, is an ordinary and usual method of accounting.
The accountant who testified for plaintiff, although he strenuously contended that he would have used another method, did concede that the accountants named in the contract could bo *39 correct in interpreting the word, “value,” as meaning depreciated cost, but that the word could mean other things which he would have used had he been determining the depreciated value.
The standard books on accounting designate depreciated cost as an ordinary and usual method of determining value.
In Accountants Handbook (3 Ed.), edited by W. A. Patton, professor of accounting at the University of Michigan, it is stated, as follows, at page 658:
“Depreciation as a rule is based on cost value although there are special bases allowed in certain circumstances for income tax purposes * * *. Of the various methods of apportioning depreciation employed in practice the so-called straight line plan is much the most common. The basic estimate in the measurement of depreciation is that of effective service lif G * # *99
In Accounting for Lawyers, by A. L. Shugerman, associate professor of accounting at Western Reserve University, it is stated at page 277:
“Depreciation accounting is one of those subjects that has been oft maligned and more frequently misunderstood. As in other situations, malignment and misunderstanding make compatible companions.
“In many instances, the reason for the misunderstanding is a failure to realize that the depreciated value of an asset does not necessarily represent the amount for which it can currently be sold. The depreciated value in no sense purports to be the market price. The depreciated value merely represents that part of an asset’s basis (usually cost) that has not yet been chipped away as depreciation expense charges to P & L.”
In General Accounting, by H. A. Finney, professor of accounting at Northwestern University, it is stated, as follows, at page 256:
“It is considered good accounting to show fixed assets in the balance sheet at cost less proper deductions for depreciation, depletion and amortization.”
Since, as we have said, where parties submit a disputed question to a skilled arbitrator, giving him directions as to making the determination entrusted to him, and he, without bad *40 faith or fraud, follows those directions, and the parties agree to abide by his decision, neither party can thereafter question that decision simply because some other skilled person might have arrived at a different decision.
We hold that, under the contract between plaintiff and defendant, the accountants, who were the arbitrators whose decision was to be final and conclusive, did follow the directions in the contract and did employ ordinary and usual methods of accounting in determining the value of machinery and equipment of The Brennan Company at the depreciated value thereof. They were not told to find the actual value of such items, and if they had made an appraisement and done so, either one of the parties who had been harmed thereby could have questioned the accountants’ statement because an appraisement of actual value would have been a departure from the directions in the contract.
Therefore, when the accountants valued the machinery on a depreciated cost basis at $1,717.85, and the office equipment on the same basis at $92.54, and stated that those values were not necessarily the present true values, they acted only in accordance with the instructions given them, and, by their contract with each other, plaintiff and defendant are bound by such determination.
It follows that the judgment of the Court of Appeals must be, and it hereby is, reversed, and final judgment rendered for defendant.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taft, JJ., concur.